IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

DEANDRE BASKERVILLE,          )          CASE NO. 5:18CV2277
                              )
               Petitioner,    )
                              )          JUDGE JOHN R. ADAMS
          v.                  )
                              )          MAGISTRATE JUDGE
ED SHELDON,                   )          JONATHAN D. GREENBERG
Warden                        )
                              )          **REPORT & RECOMMENDATION**
               Respondent.    )

**Table of Contents**

I.      Summary of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        A.     Trial Court Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        B.     Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        C.     Application to Reopen Appeal under Ohio App. R. 26(B). . . . . . . . . . . . . . . . . . 6
        D.     Post-Conviction Filings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        E.     Federal Habeas Petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.    Exhaustion and Procedural Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        A.     Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        B.     Application to Petitioner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
               1.     Ground Four, Five (supporting facts A and C), Six, and Seven . . . . . . . . 19
                      a.     Cause and Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
                      b.     Actual Innocence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
               2.     Ground One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.     Non-cognizable Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
        A.      Ground One. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
        B.      Ground Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
        C.      Ground Three . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

V.      Review on the Merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
        A.      Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
                1.      Grounds Three and Eight . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
                2.      Ground Five (Supporting Fact B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

VI.     Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Deandre Baskerville ("Baskerville" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Baskerville is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State v. Baskerville*, Summit County Court of Common Pleas Case No. CR2015-10-3270.  For the following reasons, the undersigned recommends that the Petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Baskerville's conviction as follows:

> {¶ 2} On an evening in August 2015, Mr. Baskerville went to the mall with his cousin. While there, he saw an acquaintance, the victim in this matter, and approached him. According to Mr. Baskerville, the victim owed him money and he wanted to speak with the victim regarding their business arrangement. There is no dispute that, while the two spoke, an argument developed, and the victim became increasingly upset. Eventually, the two walked out of the mall

2

together as they continued to argue. The argument ended when Mr. Baskerville removed a knife from his pocket and stabbed the victim once in the side of the neck. The victim then stumbled back into the mall where he died shortly thereafter. According to Mr. Baskerville, he stabbed the victim in self-defense. He admitted, however, that he ran from the scene, disposed of his knife, sanitized his car, burned the clothes he was wearing, and left Ohio. The police apprehended Mr. Baskerville in West Virginia the following month.

{¶ 3} A grand jury indicted Mr. Baskerville on two counts of murder and one count of aggravated murder, felonious assault, and carrying a concealed weapon. The matter proceeded to a jury trial, at the conclusion of which the jury found Mr. Baskerville not guilty of aggravated murder, but guilty of his remaining charges. The trial court sentenced him to fifteen years to life in prison.

*State v. Baskerville*, 91 N.E.3d 340, 2017-Ohio-4050 (Ohio App. 9th Dist. May 31, 2017).

## II. Procedural History

### A.    Trial Court Proceedings

In October 2015, a Summit County Grand Jury issued an indictment charging Baskerville with one count of aggravated murder (Count One); two counts of murder in violation of Ohio Rev. Code §§ 2903.02(A) and (B) (Counts Two and Three); one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1)/(A)(2) (Count Four); and one count of carrying a concealed weapon in violation of Ohio Rev. Code § 2923.12(A)(1).  *See* Doc. No. 16-1, Ex. 2, 20; *State v. Baskerville*, 91 N.E.3d 340, 2017-Ohio-4050, at ¶3.  Baskerville pled not guilty.  (Doc. No. 16-1, Ex. 2.)

The case proceeded to jury trial on February 1, 2016.  (Doc. No. 16-2.)  On February 5, 2016, the jury found Baskerville guilty of both murder charges, felonious assault, and carrying a concealed weapon, but not guilty of aggravated murder.  (Doc. No. 16-1, Ex. 4, 5.)

On February 16, 2016, the state trial court held a sentencing hearing.  (Doc. No. 16-1, Ex. 5; Doc. No. 16-10.)  The trial court merged the murder and felonious assault charges and the State

elected to proceed on the murder charge set forth in Count Two of the indictment. (Doc.  No. 16-1, Ex. 5.)  Baskerville was sentenced to fifteen years to life on the murder charge and six months imprisonment on the carrying a concealed weapon charge, with both sentences to be served concurrently for an aggregate prison term of fifteen years to life.  (*Id*.)

**B.     Direct Appeal**

On March 1, 2016, Baskerville, through counsel, filed a Notice of Appeal to the Ninth District Court of Appeals of Ohio (the "state appellate court").  (Doc. No. 16-1, Ex. 6.)  In his appellate brief, he raised the following grounds for relief:

I.     The trial court erred in allowing introduction of evidence of other crimes, wrongs or acts to show Mr. Baskerville's character in violation of the Rules of Evidence denying Mr. Baskerville due process  and equal protection of law under both the US Constitution and the Ohio Constitution.

II.     The trial court erred when it charged the jury with a confusing and misleading self-defense instruction.

III.     The prosecutor's conduct throughout the trial rose to the level of prosecutorial misconduct and deprived Mr. Baskerville of his right to due process of law and a fair trial in violation of his 5th, 6th and 14th amendment rights under the US Constitution and Article I, section 10 of the Ohio Constitution.

IV.     The trial court erred in admitting into evidence inflammatory, cumulative, and gruesome photographs in violation of Mr. Baskerville's rights to a fair trial as protected by the 5th, 6th, and 14th Amendments to the United States Constitution and Article I, section 10 of the Ohio Constitution.

V.     The trial court erred in allowing prosecutor to continually refer to an inadmissible video and to use the video and information therein for impeachment of the state's own witness.

VI.     The trial court erred in not instructing the jury on the lesser included offenses of involuntary manslaughter, voluntary manslaughter, and aggravated assault as required under the law.

VII.    Mr. Baskerville's murder and felonious assault convictions were against
        the manifest weight of the evidence and as a result his rights under the 14th
        Amendment to the US Constitution and Article 1, Section 16 of the Ohio
        Constitution were violated requiring his conviction on those counts be
        vacated.

VIII.   Mr. Baskerville's rights pursuant to the 6th and 14th Amendments to the
        United States Constitution were violated due to ineffective assistance of
        counsel.

(Doc. No. 16-1, Ex. 7.)  The State filed a Brief in Opposition, to which Baskerville replied.  (Doc.

No. 16-1, Ex. 8, 9.)

On May 31, 2017, the state appellate court affirmed Baskerville's convictions and sentences.

(Doc. No. 16-1, Ex. 10.)  *See also State v. Baskerville*, 91 N.E.3d 340, 2017-Ohio-4050.

On July 10, 2017, Baskerville filed a *pro se* notice of appeal to the Supreme Court of Ohio.

(Doc. No. 16-1, Ex. 11.)  In his memorandum in support of jurisdiction, Baskerville raised the

following propositions of law:

I.      It is error for the trial court to allow introduction of evidence of other
        crimes, wrongs or acts to show Mr. Baskerville's character in
        violation of the Rules of Evidence denying Mr. Baskerville due
        process and equal protection of law under both the U.S. Constitution
        and the Ohio Constitution.

II.     It is error for the trial court to charge the jury with a confusing
        and misleading self-defense instruction.

III.    The prosecutor's conduct throughout the trial rose to the level of
        prosecutorial misconduct and deprived Mr. Baskerville of his
        right to due process of law and a fair trial in violation of his 5th, 6th and
        14th Amendment rights under the U.S. Constitution and Article I,
        Section 10 of the Ohio Constitution.

IV.     It is error for the trial court to admit into evidence
        inflammatory, cumulative and gruesome photographs in violation
        of Mr. Baskerville's rights to a fair trial as protected by the 5th, 6th
        and 14th Amendments to the United States Constitution and
        Article I, Section 10 of the Ohio Constitution.

V.    It is error for the trial court to allow a prosecutor to continually refer to an inadmissible video and to use the video and information therein for impeachment of the State's own witness.

VI.    It is error for the trial court to not instruct the jury on the lesser included offenses of involuntary manslaughter, voluntary manslaughter and aggravated assault as required under the law.

VII.    Mr. Baskerville's murder and felonious assault convictions were against the manifest weight of the evidence and as a result his rights under the 14th Amendment to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution were violated requiring his conviction on those counts be vacated.

VIII.    Mr. Baskerville's rights pursuant to the 6th and 14th Amendments to the United States Constitution were violated due to ineffective assistance of counsel.

(Doc. No. 16-1, Ex. 12.)

On October 11, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 16-1, Ex. 14.)

**C.    Application to Reopen Appeal under Ohio App. R. 26(B)**

On August 29, 2017, Baskerville, through counsel, filed an Application to Reopen Appeal Pursuant to Ohio App. R. 26(B).  (Doc. No. 16-1, Ex. 15.)  Baskerville's Application asserted appellate counsel was ineffective for failing to raise the following arguments:

I.    Repeated references to the deceased as the "victim" invaded the province of the jury and denied the appellate due process of law and a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

II.    The Appellant was denied his right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.[1]

---

[1] Specifically, Baskerville argued appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to (1) object when several witnesses referred to the

III.     The Appellant's right to due process and a fair trial as guaranteed by the
         Sixth and Fourteenth Amendments to the United States Constitution
         were violated due to misconduct on the part of the prosecutor.

(*Id*.)  The State filed a brief in opposition.  (Doc. No. 16-1, Ex. 16.)

On November 21, 2017, the state appellate court considered Baskerville's Application on

the merits and denied it.  (Doc. No. 16-1, Ex. 17.)  Baskerville attempted to appeal to the Ohio

Supreme Court, but his filings were not accepted because they were untimely (Doc. No. 1-3), and

a delayed appeal cannot be filed if the appeal is from a decision on an App. R. 26(B) motion.  Ohio

S.Ct.Prac.R. 7.01(A).

**D.      Post-Conviction Filings**

Over a year later, on November 27, 2018, Baskerville filed a *pro se* Petition to Vacate or Set

Aside Sentence and Motion for New Trial in the state trial court.  (Doc. No. 16-1, Ex. 18.)  Therein,

Baskerville asserted he was entitled to post-conviction relief due to: (1) selective prosecution

because a Caucasian defendant who stabbed his roommate to death over fast food was charged with

less serious crimes and offered a plea bargain to a lesser offense than Petitioner, an African

American; (2) ineffective assistance of counsel for failure to request a jury instruction and pursue

evidence consistent with counsel's "Ex Parte Brief" filed on February 8, 2016; and (3) trial counsel's

failure to request a change of venue and reselection of jurors.  (*Id*.)  The State filed a Memorandum

in Opposition on December 19, 2018.  (Doc. No. 16-1, Ex. 19.)

On February 5, 2019, the state trial court denied Baskerville's Petition as untimely and

_____

deceased as "the victim," (2) move for a mistrial on that basis as well as on the basis of
prosecutorial misconduct; (3) object to allegedly misleading jury instructions; and (4) request
an involuntary manslaughter lesser included offense instruction.  (Doc. No. 16-1, Ex. 15.)

barred by *res judicata*, as follows:

> Petitions for post-conviction relief are governed by R.C. 2953.21 through R.C. 2953.23. Under these statutes, any defendant who has been convicted of a criminal offense and who claims to have experienced a denial or infringement of his or her constitutional rights (federal or Ohio) may petition the trial court to vacate or set aside the judgment and sentence. R.C. 2953.21(A). A post-conviction proceeding is not an appeal of a criminal conviction; it is a collateral civil attack on the judgment. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 48, citing *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994); R.C. 2953.21(J). When a direct appeal of the judgment of conviction has been taken (as in this case), a petition for post-conviction relief must be filed no later than 365 days "after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication." R.C. 2953.21(A)(2). Trial courts lack jurisdiction to consider an untimely petition for post-conviction relief, unless the untimeliness is excused under R.C. 2953.23(A). *State v. Current*, 2d Dist. Champaign No. 2012 CA 33, 2013-Ohio-1921, 2013 WL 1933041, ¶ 16.

> The State contends the Petition is untimely because it was due July 14, 2017 and petitioner failed to demonstrate any of the conditions of R.C. 2953.23(A) apply to excuse his untimely petition. * * *

> Petitioner asserts his untimeliness should be excused because the Caucasian defendant's case occurred after Petitioner's conviction and could not have been discovered during Petitioner's trial. Petitioner claims a new one-year time limitation period began on December 5, 2017, the date the Caucasian defendant was sentenced. Even if this Court were to accept Petitioner's assertions as true, Petitioner has failed to demonstrate by clear and convincing evidence that, but for constitutional error at trial (the Caucasian defendant's unrelated case), no reasonable factfinder would have found Petitioner guilty of the offense of which he was convicted; therefore, the Petition is untimely.

> Petitioner does not address why his untimeliness should be excused for the other factors raised in his Petition. "Unavoidably prevented from discovering" typically means the defendant was unaware of the facts upon which the petition was based and he was unable to discover them through reasonable diligence." *See, e.g., State v. Burton*, 9th Dist. No. 28359, 2017-Ohio-7588, 2017 WL 4078938, ¶ 9. The issues of counsel's purported failure to: request a jury instruction; pursue evidence in the "Ex Parte Brief" filed by counsel on Petitioner's behalf on February 8, 2016; request a change of venue; and request a reselection of jurors, were all known to Petitioner as they were occurring and could have been raised on direct appeal. The *res judicata* doctrine states, "a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that

8

judgment, any defense or any claimed lack of due process that was raised or could been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967).

Motions for a new trial pursuant to Crim. R. 33 must be filed within 14 days after the jury renders its verdict. Motions based on newly discovered evidence must be made within 120 days after the verdict. Crim. R. 33(B). An untimely motion based on newly-discovered evidence will not be considered unless the defendant requests leave and shows "by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely[.]" Crim.R. 33(B); *see also State v. Scheibel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Petitioner has not requested leave and has not met this burden for a new trial.

Upon review, the Court finds the Petition untimely, and is DISMISSED. Defendant/Petitioner's motion for a new trial is untimely and DENIED.

(Doc. No. 25-1, Ex. 22.)

The state court docket reflects that, on March 1, 2019, Baskerville filed a *pro se* appeal in the state appellate court.  (Doc. No. 25-1, Ex. 23.)  On September 11, 2019, the state appellate court affirmed the trial court's dismissal of Baskerville's post-conviction relief petition and the denial of his untimely motion for a new trial.  *State v. Baskerville*, 2019 WL 4302860, 2019-Ohio-3639 (Ohio App. 9th Dist. Sept. 11, 2019).[2]

## E.       Federal Habeas Petition

Meanwhile, on September 24, 2018,[3] Baskerville, proceeding *pro se*, filed a Petition for Writ

---

[2] As discussed *infra*, Baskerville withdrew the claims presented in his post-conviction relief petition from his habeas petition.

[3]Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until October 1, 2018, Baskerville states that he placed it in the prison mailing system on September 24, 2018.  (Doc. No. 1 at 13.) Thus, the Court will consider the Petition as filed on September 24, 2018.

of Habeas Corpus pursuant to § 2254 in this Court.  (Doc. No. 1.)  Therein, he raised the following

eight grounds for relief:

>    I.    Petitioner's due process and equal protection of laws right's to a fair
>          trial under the 14th Amendment of the U.S. Constitution were violated
>          when the trial court instructed the jury with a confusing and misleading
>          self-defense instruction.
>
>          **Supporting Facts**: The Court presented faulty, misleading elements
>          on the self-defense instruction in light of the specific facts of this case.  The
>          use of the statement "at fault in creating this situation giving rise to the
>          altercation" without defining "at fault", "situation" or "altercation" in more
>          detail left the jury to believe that if Mr. Baskerville simply started a verbal
>          discussion he was precluded from claiming self-defense.
>
>    II.   The Petitioner's due process and equal protection right's to a fair trial
>          under the 14th Amendment of the U.S. Constitution were violated when
>          the trial court did not instruct the jury on the lesser included offenses or
>          Involuntary Manslaughter and Voluntary Manslaughter. *State v Barnes*
>          [,] 94 Ohio St 3d 21[,] *Stevenson v. U.S.*[,] 162 U.S. 313.
>
>          **Supporting Facts**:  The evidence presented in this case merit instructions
>          on the lesser included offense of Murder thus the failure to provide a lesser
>          included offense of Murder resulted in a fundamentally unfair criminal
>          trial.  Based on the State's argument that Mr. Baskerville was enraged
>          and the evidence that Terrance Rogers threatened Mr. Baskerville and
>          pulled a deadly weapon the jury could have refused his self-defense,
>          believed the death was not purposeful and yet convicted him of either
>          Involuntary Manslaughter or Voluntary Manslaughter for lack of intent,
>          enragement or a sudden passion.
>
>    III.  Mr. Baskerville was denied due process and equal protection in violation
>          of the 5th and 14th Amendments to the U.S. Constitution because his
>          Murder and Felonious Assault conviction's were against the manifest
>          weight of evidence and would require his conviction on those counts be
>          vacated.  *City of Struthers v. Williams*, 2008-Ohio-6637, *Jackson v.
>          Virginia*[,] 443U.S. 307[,] *In re Winship*[,] 397 U.S. 358.
>
>          **Supporting Facts:** The State of Ohio convicted Mr. Baskerville of Murder
>          without providing a scintilla of evidence proving each element of the crime.
>          He was convicted of Murder under the theory that he committed a Felonious
>          Assault. Mr. Baskerville contests that this death is justified because it was
>          done out of fear of death or great bodily harm. The evidence showed the

deceased dies from one stab wound with a knife in his hand. Because he was convicted of Murder without any evidence of intent this conviction violated his due process and equal protection of the law.

IV.    The petitioner's due process of law and right's to a fair trial as guaranteed by the 6th and 14th Amendment's to the U.S. Constitution were violated when numerous of witnesses for the State referred to the deceased as "the victim". *State v. Albino* (2011) 130 Conn. App 745, *State v. Nomura* (1995) 79 Haw. 413[.]

    **Supporting Facts**: Throughout the trial numerous of witnesses for the State referred to the deceased as the "the victim", that invaded the province of the jury. The defense of self-defense required that jury to determine whether he was justified. The testimony given was the equivalent of the law enforcement officials offering their opinion of guilt. If the jury were to determine that he acted in self-defense then there was no crime and no "victim".

V.    The prosecutor's conduct throughout trial rose to the level of prosecutorial misconduct and deprived Mr. Baskerville of his rights to due process of law and a fair trial in violation of his 5th, 6th and 14th Amendment rights under the U.S. Constitution. *United Sates v. Moore* 495 Fed Appx.680[.]

    **Supporting Facts**: (A) After sustained objections the prosecutor repeatedly disregarded the Court's rulings and continued to inject improper comments and questions in front of the jury which were designed to invite the jury to speculate on matters not in evidence

    (B) When the Sate did not get the answer it wanted from their own witness the prosecutor continually referred to an inadmissible video statement to try to employ impeachment by prior inconsistent statement as a mere subterfuge to get before the jury inadmissible evidence.

    (C) On cross examination the prosecutor went in depth about Mr. Baskerville's previous crimes and bad acts including pointing out he was once convicted for carrying a gun, although this case involved a stabbing for the sole purpose of showing his propensity for crime and bad character.

VI.    The Petitioner was denied his right to effective assistance of counsel as guaranteed by the 6th and 14th Amendments to the U.S. Constitution by counsel's failure to object or move for mistrial. *Engle v. Issac*[,] 456 U.S. 107.

    **Supporting Facts**: (A) Trial counsel failed to object to the Courts confusing and misleading self-defense instruction to the jury. Lack of definition of

11

terms associated with the self-defense instruction allowed for confusion of the jury interpreting the law and also limited the scope of view on appeal.

(B) Counsel failed to object to repeated references to the deceased as the "victim". Counsel's failure to object to such clearly improper conclusory testimony severely prejudiced him in his attempt to establish self-defense.

(C) Petitioner submits that the prosecutor's repeated interjection of improper speculative questions/comments deprived him of a fair trial and trial counsel should have moved for mistrial.

VII.     The Petitioner was denied his right to effective assistance of counsel as guaranteed by the 6th and 14th Amendment's to the U.S. Constitution by counsel's failure to request jury instructions on the lesser included offense of Murder which is Involuntary Manslaughter. *Strickland v. Washington*

**Supporting Facts**: Trial counsel rendered ineffective assistance when he mistakenly believed that the petitioner was precluded from requesting an instruction to the jury of the lesser included offense of Murder which is Involuntary Manslaughter. By doing so the Ninth District Appellate Court found that counsel waived any claim of error by not requesting the instruction even though it may have been upon a mistaken understanding of the law by counsel.

VIII.    Petitioner's due process clause of the 14th Amendment to the U.S. Constitution was violated when the State found him guilty upon insufficient evidence. *Bagby v. Sowders* 894 F.3d 792 *Johnson v. Coyle* 200 F.3d 987 In re Winship 397 U.S. 397 U.S. 358 [sic].

**Supporting Facts**: The State of Ohio failed to present any evidence that Mr. Baskerville purposely caused the death and knowingly committed Felonious Assault. Further with a lack of intent and no evidence that Mr. Baskerville met all elements for Felonious Assault that offense could not be used as the predicate felony to invoke the felony Murder rule. Because the State failed to present proof beyond a reasonable double of each element his conviction is a miscarriage of justice.

(Doc. No. 1-4.)

On November 29, 2018, Baskerville filed a Motion for Appointment of Counsel (Doc. No. 9) and Motion for Stay and Abeyance (Doc. No. 10.)  In the latter, Baskerville asked the Court to stay the instant Petition in order to allow him to exhaust the grounds raised in his state court Petition

12

for Post-Conviction Relief.  (Doc. No. 10.)  Respondent opposed Baskerville's Motion to Stay. (Doc. No. 11.)

Baskerville then filed two Motions to Amend the Petition, on December 26, 2018 and January 4, 2019.  (Doc. Nos. 13, 15.)  In both, Baskerville sought leave to amend the instant Petition to assert the grounds raised in his state court Petition for Post-Conviction Relief.  (*Id.*)  Specifically, in the January 4, 2019 Motion to Amend, Baskerville asked to amend his habeas petition to add the following two claims:

1. Petitioners due process and equal protection of the law right's, under the 5th and 14th Amendments of the United States Constitution, were violated by the State's prosecution for their selective and discriminatory selection of him for prosecution based on his race.

   **Supporting Facts**: Mr. Baskerville was charged with Aggravated Murder, Murder A & B, Felonious Assault.  Prosecution offered him 15 years to life for exchange of a guilty plea to Murder, even though the evidence showed he was not the aggressor and had no intent of committing Murder. In the same court (Judge Rowlands), the same prosecutor (Brian Laprinzi) charged Kendal Schied, a caucasian male, with Murder but dropped his charges to Involuntary Manslaughter and offered him 8 years.  Evidence showed Mr. Scheid told his victim "He would stab him if he touched his food."  Mr. Scheid did follow thru with the threat and was sentenced to 3 years and let out after only serving 9 months in prison.

2. Petitioner was denied his right to effective assistance of counsel as guaranteed by the 6th Amendment of the United States Constitution because his counsel failed to introduce and pursue evidence. Counsel also failed to request a change of venue and a reselection of jurors.

   **Supporting Facts**: Counsel filed an Ex-Parte Trial brief two days after trial (February 8, 2016).  It consisted of issues for the courts considerations and should be considered as trial strategy.  Mr. Baskerville's case was very publicized, 24 out of 28 jurors had discussed the case before becoming a juror.  There was only one African American in the jury pool and for personal reasons she wanted off the case. The fact that Mr. Baskerville was put on trial and not one member of the jury selection, besides the one who excluded herself, was of his race denied him a fair trial.

13

(Doc. No. 15.)  Respondent opposed Baskerville's Motion to Amend.  (Doc. No. 14.)

On January 11, 2019, Respondent filed his Return of Writ.  (Doc. No. 16.)  On February 1, 2019, Baskerville filed Motions to "renew" his previously filed Motions to Amend and for Stay and Abeyance.  (Doc. Nos. 17, 18.)

Shortly thereafter, Baskerville sought an extension of time to file his Traverse, which was granted until March 27, 2019.  (Doc. No. 21; Non-Document Order dated February 26, 2019).

On March 12, 2019, the Court granted Baskerville's Motions to Amend (Doc. Nos. 13, 15), but denied his Motion for Stay and Abeyance (Doc. No. 10) and his Motion for Appointment of Counsel (Doc. No. 9).  (Doc. No. 22.)  The Court acknowledged the amendment created a "mixed" petition, *i.e.*, a petition presenting exhausted and unexhausted claims, and, further, that courts ordinarily dismiss a mixed petition unless the expiration of the statute of limitations would bar the claims upon the petitioner's return to federal court.  (Doc. No. 22 at 14, 19 n.6.)  While this Court did not decide the issue, it expressed concern that dismissal of Baskerville's Petition could "potentially pose a statute of limitations problem for him upon his eventual return to federal court." (*Id.* at 19 n.6.)  At that time, this Court declined to dismiss Baskerville's Petition in its entirety, particularly since Baskerville's Petition contained several fully exhausted claims.  (*Id.*)  This Court stated it would consider how to proceed once the Traverse was filed and the matter fully ripe.  (*Id.*) The Court directed the Respondent to file a response to Baskerville's Traverse no later than 30 days from the filing of Baskerville's Traverse and to supplement the record to include any and all filings relating to Baskerville's November 2018 post-conviction petition.  (Doc. No. 22 at 21.)

On March 22, 2019, Baskerville filed a motion to reconsider the Court's decision to deny his motion for stay and abeyance.  (Doc. No. 23.)

14

On April 12, 2019, Baskerville filed a Traverse.  (Doc. No. 24.)  On April 30, 2019, Respondent filed additional records as ordered.  (Doc. No. 25.)  On May 1, 2019, Respondent filed his response to Baskerville's most recent Traverse.  (Doc. No. 26.)

On May 28, 2019, Baskerville filed a Supplement to his April 12, 2019 Traverse, along with a Motion to Combine his April 12, 2019 and May 28, 2019 filings.  (Doc. Nos. 27, 28.)  On June 12, 2019, by non-document order, the Court granted the motion to combine and ordered Respondent to file a response to the combined Traverse by July 12, 2019.

On June 12, 2019, the Respondent filed additional state court records.  (Doc. No. 29.)  On June 13, 2019, Respondent filed his response to Baskerville's combined Traverse.  (Doc. No. 30.)

On June 28, 2019, Baskerville filed a motion to withdraw grounds nine and ten "in order to avoid dismissal" under Fed. R. Civ. P. 41.  (Doc. No. 31.)

On October 3, 2019, this Court denied Baskerville's motion to reconsider its decision to deny his motion for stay and abeyance (Doc. No. 23).  (Doc. No. 32.)  This Court granted Baskerville's motion to withdraw grounds nine and ten.  (*Id.*)  Therefore, this Report and Recommendation focuses solely on grounds one through eight raised in Baskerville's original Petition (Doc. No. 1).

### III. Exhaustion and Procedural Default

**A.     Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the

petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[4]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.  *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir.

---

[4] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp. 2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

16

2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for

the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 Fed. App'x 473, 480 (6th Cir. 2012).

## B.  Application to Petitioner

Respondent asserts that Grounds One, Four, Five (supporting facts A and C), Six, and Seven

18

are procedurally defaulted. (Doc. No. 16 at 19-27.) The Court will address each of these grounds in turn, in reverse order.

### 1.     Ground Four, Five (supporting facts A and C), Six, and Seven

Respondent maintains that Baskerville's Petition "mixes arguments on direct appeal with arguments added to his [a]pplication to reopen as if both were submitted on the merits. The two arguments are not on an equal procedural footing." (*Id.* at 17.) In his Return of the Writ, Respondent argues, "It is well-established that an [a]pplication to reopen does not preserve for an independent review the underlying errors regarding what appellate counsel failed to argue that allegedly constitute ineffective assistance of appellate counsel." (*Id.*) In addition, in his Response to Baskerville's Traverse, Respondent asserts that Baskerville's 26(B) application to reopen his appeal "is procedurally defaulted because it was not timely appealed to the Supreme Court of Ohio, and that court declined review." (Doc. No. 26 at 6.)

Baskerville appears to concede Grounds Four, Five (supporting facts A and C), Six, and Seven are procedurally defaulted, but argues cause and prejudice excuse the default. (Doc. No. 27 at 5-6.)

The Court finds Grounds Four, Five (supporting facts A and C), Six, and Seven are procedurally defaulted. Baskerville did not raise these claims on direct appeal.[5] While he did raise ineffective assistance of appellate counsel claims relating to appellate counsel's failure to raise these

---

[5] While Baskerville's framing of the issues to the state appellate court included a prosecutorial misconduct argument that arguably could have encompassed supporting fact (A), the body of the brief focused on the State's references to "blood and gore" and supporting facts (B) and (C). (Doc. No. 16-1, Ex. 7 at 16-23.) Supporting fact (C) is procedurally defaulted because Baskerville did not make this argument to the Ohio Supreme Court. (Doc. No. 16-1, Ex. 12 at 8-9.)

19

arguments on direct appeal,[6] this does not preserve Four, Five (supporting facts A and C), Six, and Seven as set forth in Baskerville's Petition for federal habeas review.  Indeed, it is well-established that "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct."  *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008).  As another district court within this Circuit has explained:

> [U]nder Ohio law, an application for reopening pursuant to App. R. 26(B), or a "Murnahan" motion, is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping underlying constitutional claims that were omitted from the direct appeal in the first place.  Fair presentment requires a petitioner to present his claims to the state courts in a procedure and manner that will provide the state courts with the opportunity to apply controlling legal principles. *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).  To the extent petitioner is suggesting that raising a claim in a Rule 26(B) application is equivalent to raising that claim on direct appeal, he is in error.  The notion that any constitutional claim raised in an application for reopening is fairly presented to the state courts in the same manner as if that claim had been raised in a timely direct appeal is untenable and unsupported by case law.  The only claims that can be preserved in a Rule 26(B) application for reopening, therefore, are claims of ineffective assistance of appellate counsel.

*Stojetz v. Ishee*, 389 F. Supp. 2d 858, 898–99 (S.D. Ohio 2005).  *See also Wogenstahl v. Mitchell*,

---

[6] Baskerville, through counsel, raised the following grounds in his App. R. 26(B) Application: (1) "Repeated references to the deceased as the "victim" invaded the province of the jury and denied the appellate due process of law and a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution"; (2) Baskerville "was denied his right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution" (specifically, appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to (a) object when several witnesses referred to the deceased as "the victim;" (b) move for a mistrial on that basis as well as on the basis of prosecutorial misconduct; (c) object to allegedly misleading jury instructions; and (d) request an involuntary manslaughter lesser included offense instruction); and (3) Baskerville's "right to due process and a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution were violated due to misconduct on the part of the prosecutor."  (Doc. No. 16-1, Ex. 15.)

668 F.3d 307, 343 (6th Cir. 2012); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *Enyart v. Coleman*, 29 F. Supp. 3d 1059, 1098 (N.D. Ohio 2014); *White v. Shewalter*, No. 1:10CV1265, 2012 WL 2711463, at *10 (N.D. Ohio March 14, 2012), *report and recommendation adopted by* 2012 WL 2741551 (July 9, 2012). Thus, Baskerville's App. R. 26(B) Application did not preserve his underlying claims for habeas review.

In light of the above, the Court finds Four, Five (supporting facts A and C), Six, and Seven of Baskerville's Petition are procedurally defaulted.

### a.    Cause and Prejudice

Baskerville may nevertheless obtain a merits review of these claims if he can demonstrate cause for the default and resulting  prejudice, or that failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren*, 440 F.3d at 763. Regarding cause, Baskerville maintains:

> The "cause" for this is the ineffective assistance of his appellate counsel.  The state courts [sic] basis for adjudication that there was no ineffective assistance of appellate counsel was unreasonable.  Not only that Petitioner was not able to get these assignments of error in front of the Ohio Supreme Court on time because of Institutional Interference. (See Ex. A).  Due to the Institutions [sic] computer switch over Mr. Baskerville's files containing his 26 B arguments were unable to be obtained and printed out by the Librarian.

(Doc. No. 27 at 5-6.)

The Sixth Circuit has held that cause to excuse the procedural default of a habeas claim may exist if a petitioner's appellate counsel was ineffective in failing to raise the issue. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013); *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004); *Smith v. Ohio, Dept. of Rehab. and Corr.*, 463 F.3d 426, 432 (6th Cir. 2006); *Berry v. Warden, Southern Ohio Corr. Facility*, 3:14CV2518, 2016 WL 4177174, at *3 (N.D. Ohio Aug. 8, 2016).

21

However, the underlying claim of ineffective assistance of counsel must in and of itself not be in default.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (finding unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim).

As discussed above, the record reflects Baskerville raised ineffective assistance of appellate counsel claims in his App. R. 26(B) Application, which the state appellate court considered on the merits and rejected.  (Doc. No. 16-1, Ex. 17.)  Baskerville failed, however, to timely appeal the denial of his application to the Ohio Supreme Court.

Under its procedural rules, the Ohio Supreme Court has jurisdiction over timely appeals which are made within 45 days of the state appellate court's decision.  *See* Ohio S.Ct.Prac.R. 6.01(A)(1) & 7.01(A)(1).  The Ohio Supreme Court may, in its discretion, take jurisdiction over untimely felony appeals upon motion for leave to file a delayed appeal pursuant to Ohio S.Ct.Prac.R. 7.01(A)(4).  However, this rule specifically precludes delayed appeals for appeals brought pursuant to App. R. 26(B).  Ohio S.Ct.Prac .R. 7.01(A)(4).  "[T]he timeliness requirements for an appeal to the Ohio Supreme Court . . . constitute adequate and independent state grounds to preclude hearing an untimely claim on the merits."  *Baker v. Bradshaw*, 495 F. App'x 560, 565 (6th Cir. 2012).

The Court finds Baskerville's failure to file a timely appeal from the state appellate court decision on his App. R. 26(B) Application to the Ohio Supreme Court resulted in a procedural default.  Therefore, Baskerville's ineffective assistance of appellate counsel claims are procedurally barred unless Baskerville can satisfy the cause and prejudice standard for these claims.  *See Edwards*, 529 U.S. at 453.  A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the

22

petitioner fails to do so, the Court need not consider the prejudice prong.  *Smith v. Murray*, 477 U.S. 527, 533–34 (1986).

Baskerville attempts to excuse the procedural default of his ineffective assistance of appellate counsel claims by claiming "institutional interference" prevented him from timely filing his appeal with the Ohio Supreme Court.  (Doc. No. 1-3 at 2; Doc. No. 27 at 5-6.)  Baskerville had until January 5, 2018, to appeal the state appellate court's November 21, 2017 decision denying his App. R. 26(B) Application.  (Doc. No. 1-3 at 1.)  Baskerville notified prison officials on December 28, 2017 that the librarian was out December 20-28, 2017.  (*Id.* at 3.)  Apparently the librarian returned December 28, but she was unable to print Baskerville's files because the computer service was being switched over.  (*Id.*)  Baskerville expressed concern that his appeal may be late, as it was due January 5, 2018. (*Id.*)  A document Baskerville attached to his petition shows that the prison law library was to be closed December 27-29, 2017, "possibly more or less depending on how long it takes to install the new computers."  (*Id.* at 4.)  However, prison officials notified Baskerville that the computer service switch over should be done by January 1, 2017, he should be able to print it then, and "[p]ostmarking before the 5th should keep [him] fine."  (*Id.* at 3.)

On January 2, 2018, Baskerville notified prison officials that the librarian was out January 1, 2018, and "[i]f she is here today then that means it won't go out til 1-3-18 which only leaves me 2 days . . . ."  (*Id.*)  Baskerville asked if there was any other way to get it sent (*e.g.*, email or electronically file).  (*Id.*)  The form was escalated to a Grievance, viewed by Charlie Moore, and the status was changed to Pending that same day.  (*Id.*)

The Ohio Supreme Court did not receive Baskerville's Memorandum in Support of Jurisdiction until July 26, 2018 – over six months past the deadline.  (*Id.* at 2.)  First, Baskerville fails

to provide any evidence or explanation as to why he was unable to complete and mail his appeal before the end of December, especially where, as Respondent points out (Doc. No. 26 at 7), Bakserville had a brief from counsel he could have filed with the Ohio Supreme Court.  (Doc. No. 16-1, Ex. 15 at 179-90.)  Second, Baskerville fails to provide any evidence or explanation as to what happened after January 2, 2018 that precluded him from timely submitting his appeal.  (*See* Doc. Nos. 1, 1-3, 27.)  Third, Baskerville fails to explain what caused the additional six month delay in him sending his paperwork to the Ohio Supreme Court.[7]  (*See* Doc. Nos. 1, 1-3, 27.)

As Baskerville is unable to establish cause to excuse his procedural default, the Court declines to address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527, 533–34, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *see also Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

Accordingly, and for all the reasons above, the Court finds Baskerville has failed to establish cause and prejudice to excuse the default of Four, Five (supporting facts A and C), Six, and Seven.

### b.    Actual Innocence

Finally, Baskerville has not provided any argument regarding the actual innocence exception, although his insistence that he acted out of self-defense underscores his habeas claims.  (Doc. Nos. 1, 27.)

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the

---

[7] In his letter to the Ohio Supreme Court Clerk, received July 26, 2018, Baskerville wrote, "I am simply asking for this court to note it in the docket that I did try to file it on time but due to these circumstances I was unable.  When filing a Federal Habeas Corpus I have to exhaust all state remedies to argue all my assignments of error."  (Doc. 1-3 at 2.)  This Court received Baskerville's Petition for Habeas Corpus less than three months later.  (Doc. No. 1.)

cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Carrier*, 477 U.S. at 495–96); *see also Schlup*, 513 U.S. at 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). To be credible, such a claim requires the petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324; *see also Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).

Baskerville fails to provide any new, reliable evidence to establish his innocence. (*See* Doc. Nos. 1, 27.) Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316.

### 2.     Ground One

In Ground One of his Petition, Baskerville argues his due process and equal protection rights were violated when "the trial court instructed the jury with a confusing and misleading self-defense instruction." (Doc. No. 1-4.) In support, Baskerville maintains the self-defense instruction was deficient because it contained the statement "at fault in creating the situation giving rise to the altercation" without defining the terms "at fault," "situation," or "altercation." (*Id.*) As a result, Baskerville asserts, this "left the jury to believe that if [Baskerville] simply started a verbal discussion he was precluded from claiming self-defense." (*Id.*)

Respondent argues that Ground One is procedurally defaulted, in addition to being non-cognizable (discussed below). Regarding the default, Respondent maintains that because the state

25

appellate court conducted a plain error review, Ground One is procedurally defaulted as "Ohio's enforcement of the contemporaneous objection rule is an independent and adequate state ground of decision to bar habeas relief."  (Doc. No. 26 at 10-11.)   Respondent further asserts Baskerville cannot demonstrate cause or prejudice to excuse the default.  (*Id.*)

Baskerville maintains that Grounds One through Three of his Petition were all raised on direct appeal and presented to Ohio's highest court, and therefore are not defaulted. (Doc. No. 27 at 6.)

Baskerville indeed raised this claim on direct appeal to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 16-1, Ex. 7, 12.)  The state appellate court rejected this claim as follows:

{¶ 45} In his second and sixth assignments of error, Mr. Baskerville argues that the court erred in it [sic] instructions to the jury. Specifically, he argues that the court (1) gave the jury a misleading self-defense instruction, and (2) should have instructed the jury on certain lesser-included offenses. For the reasons that follow, this Court rejects Mr. Baskerville's arguments.

{¶ 46} "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Although trial courts enjoy broad discretion in fashioning jury instructions, they must "present a correct, pertinent statement of the law that is appropriate to the facts." *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46. "[A] trial court must instruct the jury on a lesser included offense if 'the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense.'" *State v. Lockhart*, 9th Dist. Summit No. 28053, 2017-Ohio-914, 2017 WL 1051980, ¶ 14, quoting State v. Carter, 89 Ohio St.3d 593, 600, 734 N.E.2d 345 (2000). "In deciding whether to instruct the jury on a lesser-included or inferior-degree offense, the trial court must view the evidence in a light most favorable to the defendant." *State v. Meadows*, 9th Dist. Summit No. 26549, 2013-Ohio-4271, 2013 WL 5439847, ¶ 8.

{¶ 47} First, Mr. Baskerville argues that the trial court erred when it instructed the jury on self-defense because it failed to define what it means to be "at fault in creating [the] situation giving rise to the altercation * * *." He argues that, without

26

further elaboration, the jury was free to conclude that, by first approaching the victim and starting their verbal discussion, he was at fault in creating this situation. Noting his failure to object, he argues that it was plain error for the trial court to not further explain to the jury the concept of fault.

{¶ 48} This Court need not determine whether the trial court erred in its "at fault" instruction. That is because, even assuming it did, Mr. Baskerville cannot show that the inadequate "at fault" instruction caused the jury to reject his claim of self-defense. *See Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240 (plain error must affect the outcome of the trial). As previously noted, a person is only entitled to use deadly force if his "'only means of escape was the use of force'" such that he did not violate a duty to retreat or avoid the danger. *Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075, at ¶ 36, quoting *Thomas*, 77 Ohio St.3d at 326, 673 N.E.2d 1339. The jury here reasonably could have concluded that, by not remaining in the mall or otherwise retreating from the victim, Mr. Baskerville violated a duty to retreat or avoid the danger. Thus, he has not shown that he would have prevailed on his claim of self-defense, but for the court's at fault instruction. *See Barnes* at 27, 759 N.E.2d 1240. His second assignment of error is overruled.

*State v. Baskerville*, 91 N.E.3d 340, 2017-Ohio-4050, at ¶¶45-48.[8]

In Ohio, a petitioner waives an alleged error when he fails to make a contemporaneous objection. *Osborne v. Ohio*, 495 U.S. 103, 124, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (recognizing Ohio's long-standing contemporaneous objection rule). The Sixth Circuit has held that Ohio's "contemporaneous objection rule is an adequate and independent state ground barring federal habeas review, *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005), and that plain-error review is not inconsistent with the procedural default." *Awkal v. Mitchell*, 613 F.3d 629, 648–649 (6th Cir. 2010) (citing *Lundgren*, 440 F.3d at 765); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). "The state court's plain error review did not constitute a waiver of the procedural default." *Mason v. Brunsman*, 483 F. App'x 122, 130–31 (6th Cir. 2012). *See also Shafer v. Wilson*, 364 F. App'x 940, 945 (6th

---

[8] The state appellate court set forth the plain error standard earlier in its opinion when considering another of Baskerville's assignments of error. *State v. Baskerville*, 91 N.E.3d 340, 2017-Ohio-4050, at ¶32.

Cir. 2010) (finding the State of Ohio expressly enforced its contemporaneous objection rule where "the last state court to render a reasoned opinion in this case, the Ohio Court of Appeals on direct appeal, noted the failure to object, applied plain-error review, and denied [appellant's] claims for relief.")

Here, while Baskerville challenges Respondent's argument that this claim is procedurally defaulted, he does not argue there is cause and prejudice to excuse the default.  (Doc. No. 27.)

As the state appellate court correctly noted, Baskerville did not object to the self-defense instruction at trial.   Accordingly, the first three elements of *Maupin* test are satisfied as Baskerville failed to comply with the contemporaneous objection rule, the state appellate court actually enforced the rule, and the rule constitutes an "independent and adequate" state ground on which the state can foreclose federal review.  As such, and in the absence of any meaningful opposition on this issue, the Court finds Ground One of the instant Petition is procedurally defaulted.

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763 (citing *Wainwright*, 433 U.S. at 87.)  As noted above, "[d]emonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin*, 434 F.3d at 417 (6th Cir. 2006) (quoting *Murray*, 477 U.S. at 488. Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason*, 320 F.3d at 629.  Here, Baskerville has neither presented any cause for his default nor has he alleged ensuing prejudice.

The Court notes ineffective assistance of counsel may serve as cause to excuse the procedural

default of a claim if it rises to the level of a constitutional violation, but only if the underlying claim of ineffective assistance of counsel is not itself defaulted.  *See Edwards*, 529 U.S. at 453.  On direct appeal, Baskerville raised a generic claim of ineffective assistance of counsel.  (Doc. No. 16-1, Ex. 7 at 29.)  The state appellate court rejected Baskerville's ineffective assistance of counsel claim because he failed to point the court to "any particular alleged instance of ineffective assistance of counsel" in violation of App. R. 16(A)(7).  *State v. Baskerville*, 91 N.E.3d 340, 2017-Ohio-4050, at ¶52.  As a result, Baskerville's ineffective assistance of trial counsel claim is procedurally defaulted. *Hayes v. LaRose*, No. 5:14cv2461, 2016 WL 1599807, at *6 (N.D. Ohio Jan 27, 2016) ("Courts in both this district and the Southern District of Ohio have found Ohio Appellate Rule 16(A)(7) an adequate and independent state rule upon which the state may foreclose federal habeas review.") (collecting cases), *report and recommendation adopted by* 2016 WL 1558764 (N.D. Ohio Apr. 18, 2016); *Wilson v. Kelly*, No. 1:13 CV 1625, 2015 WL 13122298, at **7-8 (N.D. Ohio Mar. 31, 2015) (finding procedural default for habeas ground where state appellate court found Petitioner violated App. R. 16(A)(7)), *report and recommendation adopted by* 2017 WL 931733 (N.D. Ohio Mar. 9, 2017).

And while Baskerville did file a 26(B) Application based on appellate counsel's failure to raise a claim of ineffective assistance of trial counsel with respect to this issue, for the reasons discussed *supra*, his claims of ineffective assistance of appellate counsel are themselves defaulted and cannot excuse his procedural default here.  Therefore, the Court need not reach the prejudice prong.

In addition, as discussed *supra*, Baskerville has not come forward with any new, reliable evidence to support a credible claim of actual innocence.

Accordingly, and for all the reasons set forth above, it is recommended Ground One be dismissed as procedurally defaulted.

## IV.   Non-cognizable Claims

The federal habeas statute restricts the writ to state prisoners in custody in violation of federal law; therefore, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted.  *Freeman v. Sloan*, No. 4:13 CV 1987, 2015 WL 11120969, at *5 (N.D. Ohio March 20, 2015) (citing 28 U.S.C. § 2254(a); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)), *report and recommendation adopted by* 2016 WL 3597781 (N.D. Ohio Jul. 5, 2016).  In those instances, a claim for federal habeas relief solely based on an alleged violation of state law properly is dismissed by the federal habeas court as non-cognizable.  *Freeman*, 2015 WL 11120969, at *5 (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007)).

While a claimed error of state law may serve as the basis for federal habeas relief if such error resulted in the denial of "fundamental fairness" at trial (*Estelle*, 502 U.S. at 73, 78), the Supreme Court "very narrowly" defines the "category of infractions that violates fundamental fairness." *Bey*, 500 F.3d at 522 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  "Such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Freeman*, 2015 WL 11120969, at *5 (citing *Bey*, 500 F.3d at 521 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)) (internal quotation marks omitted).

Baskerville bears the burden of showing the principle of fundamental fairness was violated. *Freeman*, 2015 WL 11120969, at *5 (citing *Bey*, 500 F.3d at 521).  "In so doing, the federal habeas

30

court must follow the rulings of the state's highest court with respect to state law and may not second-guess a state court's interpretation of its own procedural rules." *Freeman*, 2015 WL 11120969, at *5 (citing *Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).  While generally Sixth Circuit law holds that "cumulative error claims are not cognizable on habeas [review] because the Supreme Court has not spoken on the issue" (*Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)), the Sixth Circuit also has recognized that "'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'" *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006) (quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983)).

## A.     Ground One

As set forth above, in Ground One, Baskerville argues his due process and equal protection rights were violated when "the trial court instructed the jury with a confusing and misleading self-defense instruction."  (Doc. No. 1-4.)  Baskerville maintains the self-defense instruction was deficient because it contained the statement "at fault in creating the situation giving rise to the altercation" without defining the terms "at fault," "situation," or "altercation."  (*Id.*)  As a result, Baskerville asserts, this "left the jury to believe that if [Baskerville] simply started a verbal discussion he was precluded from claiming self-defense."  (*Id.*)

Respondent argues that in addition to being procedurally defaulted, Ground One is non-cognizable on federal habeas review, as "'not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation'" (Doc. No. 16 at 27, quoting *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)), and "[t]here is no possibility that the jury could have applied this challenged instruction in a way that violates the Constitution in the facts of the case."  (Doc. No. 16

31

at 29; Doc. No. 26 at 10.)

Baskerville "bears a heavy burden in seeking federal habeas relief on the basis of an allegedly improper state-court jury instruction." *Patterson v. Caruso*, 219 F. App'x 451, 454 (6th Cir. 2007) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).  Generally, "errors in instructions of a trial court to a jury in a state criminal trial are not reviewable in federal habeas corpus proceedings . . . unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981) (citing *Henderson*, 431 U.S. at 154); *see also Harrington v. Lazaroff*, No. 5:12 CV 01005, 2015 WL 3687681, at **29-30 (N.D. Ohio June 11, 2015) (citations omitted).  As the Supreme Court made clear in *Estelle*:

> [T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief. *See Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6, 103 S.Ct. 843, 853, n. 6, 74 L.Ed.2d 646 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules"). Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to the [California Jury Instructions, Criminal (4th ed. 1979)] model. Nor do our habeas powers allow us to reverse McGuire's conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling that the prior injury evidence was admissible as bad acts evidence in this case. See Cal.Evid.Code Ann. § 1101(b) (West 1988). The only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973); *see also Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) (" '[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]' "). It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. *Cupp v. Naughten*, supra, 414 U.S., at 147, 94 S.Ct., at 400–01. In addition, in reviewing an ambiguous instruction such as the one at issue here, we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990).

502 U.S. at 71–72 (footnote omitted).

32

With the exception of his reliance on *Morris v. Cain*, 186 F.3d 581 (5th Cir. 1999),[9] Baskerville bases his arguments on state law. (Doc. No. 27 at 6-10.) The state appellate court, in its plain error review, evaluated Baskerville's claim purely as a question of state law. *State v. Baskerville*, 91 N.E.3d 340, 2017-Ohio-4050, at ¶¶45-48.[10] Baskerville's challenge to the trial court's jury instruction regarding self-defense is purely an issue of state law and fails to raise a constitutional question; therefore, it is non-cognizable on habeas review. *See Estelle*, 502 U.S. at 67-68 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to

---

[9] Morris argued the reasonable doubt instruction given at trial "used invalid language which confused or at least prejudiced the jury under *Cage v. Lousiana*, 498 U.S. 39, 111 S.Ct 328, 112 L.Ed.2d 339 (1990) (per curiam), and *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 Led.2d 583 (1994)." *Morris*, 186 F.3d at 582. The Fifth Circuit agreed the jury instruction, "taken as a whole, likely caused the jury to consider factors beyond those that the Supreme Court has deemed permissible" and reversed and remanded for further proceedings. *Id.* Even though Baskerville claims the self-defense instruction was "unconstitutionally infirm" like the instruction in *Morris*, the *Morris* case is inapposite. Baskerville couches his argument in state law and makes no assertion that it violates any clearly established federal law. It is not enough to invoke Due Process and Equal Protection under the Constitution to establish constitutional claims. *See Olson v. Little*, 604 F. App'x 387, 401 (6th Cir. 2015) ("Although a habeas 'petitioner need not cite chapter and verse of constitutional law,' 'general allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated.") (quoting *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)).

[10] Significantly, the state appellate court found that any error in the instruction did not affect the outcome of the trial. *State v. Baskerville*, 91 N.E.3d 340, 2017-Ohio-4050, at ¶¶45-48 ("This Court need not determine whether the trial court erred in its 'at fault' instruction. That is because, even assuming it did, Mr. Baskerville cannot show that the inadequate 'at fault' instruction caused the jury to reject his claim of self-defense."). For the reasons set forth in the state appellate court's opinion, *see pages* 26-27, *supra*, it is unlikely Baskerville could meet the standard under *Estelle* for federal habeas relief: that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." 502 U.S. at 72 (internal quotations omitted).

deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations omitted); *Freeman v. Sloan*, No. 16–3933, 2017 WL 3613849, at *3 (6th Cir. 2017).

Accordingly, and for all the reasons set forth above, it is recommended Ground One be dismissed as non-cognizable in addition to being procedurally defaulted.

**B.      Ground Two**

In Ground Two, Baskerville asserts his rights to due process and equal protection were violated by the trial court's failure to instruct the jury on the lesser included offenses of involuntary manslaughter and voluntary manslaughter.  (Doc. No. 1-4; Doc. No. 27 at 10.)  Regarding voluntary manslaughter, Baskerville argues the evidence supported the instruction but both Respondent and the state appellate court "focused solely on [his] never claiming to be angry or motivated by rage" and "skipped over all elements of sudden passion."  (Doc. No. 27 at 11.)  Regarding involuntary manslaughter, Baskerville argues the evidence supported the instruction and, recognizing his trial counsel failed to request this instruction, maintains the state appellate court should have analyzed it under plain error review.  (*Id.* at 12-13.)

Respondent argues Ground Two is non-cognizable as "the United States Supreme Court has never held that the due process clause requires instructing the jury on a lesser included offense in a non-capital case."  (Doc. No. 16 at 29) (citing *McMullin v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014)) (additional citations omitted).   In addition, Respondent argues Baskerville waived the involuntary manslaughter instruction at trial and, moreover, that Baskerville's argument about the evidence entitling him to an involuntary manslaughter instruction "is so implausible there cannot be anything fundamentally unfair" in the trial court's refusal to give the instruction.  (Doc. No. 16 at 30-31.)

As this district has previously explained:

> "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted))."

*Ream v. Bunting*, No. 3:15-cv-00313, 2017 WL 7805229, at *17 (N.D. Ohio April 12, 2017), *report and recommendation adopted by* 2018 WL 1083266 (N.D. Ohio Feb. 28, 2018).

The Supreme Court has declined to decide whether the Due Process Clause would require the giving of lesser-included jury instructions in a non-capital case, although it held that it is a violation of due process for a trial court to fail to give an instruction on a lesser included offense in capital cases. *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980). But the Sixth Circuit long has held that the failure to give an instruction on a lesser-included offense in a non-capital case is not "'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Freeman*, 2015 WL 11120969, at *7 (quoting *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990)). While *Bagby* left "open the possibility that the failure to give such an instruction might amount to a fundamental miscarriage of justice when that failure resulted in the conviction of an innocent person, it recognized that such situations would be rare and fact-specific." *Freeman*, 2015 WL 11120969, at *7 (citing *Bagby*, 894 F.2d at 795).

Baskerville raised his lesser-included offenses claims to the state appellate court and the Ohio Supreme Court. (Doc. No. 16-1, Ex. 7, 12.) The state appellate court, the last state court to review the claim, rejected his arguments:

{¶ 46} "[A] trial court must fully and completely give the jury all instructions which

35

are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Although trial courts enjoy broad discretion in fashioning jury instructions, they must "present a correct, pertinent statement of the law that is appropriate to the facts." *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46. "[A] trial court must instruct the jury on a lesser included offense if 'the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense.' " *State v. Lockhart*, 9th Dist. Summit No. 28053, 2017-Ohio-914, 2017 WL 1051980, ¶ 14, quoting *State v. Carter*, 89 Ohio St.3d 593, 600, 734 N.E.2d 345 (2000). "In deciding whether to instruct the jury on a lesser-included or inferior-degree offense, the trial court must view the evidence in a light most favorable to the defendant." *State v. Meadows*, 9th Dist. Summit No. 26549, 2013-Ohio-4271, 2013 WL 5439847, ¶ 8.

* * *

{¶ 49} Second, Mr. Baskerville argues that the trial court erred by not instructing the jury on the lesser-included offenses of involuntary manslaughter, voluntary manslaughter, and aggravated assault. With regard to voluntary manslaughter and aggravated assault, both offenses require a person to have acted "while under the influence of sudden passion or in a sudden fit of rage * * *." R.C. 2903.03(A); R.C. 2903.12(A). The trial court specifically denied Mr. Baskerville's request for an instruction on voluntary manslaughter because there was no evidence that he met the foregoing requirement. Mr. Baskerville never claimed to be angry or motivated by rage. Indeed, it was his testimony that he remained calm and tried to defuse the situation with the victim. He testified that he only stabbed the victim because he felt that he was in imminent harm. Moreover, the friend whose testimony he presented in his defense described him as quiet and "kind of nonchalant" during his exchange with the victim. Even viewing the evidence in a light most favorable to Mr. Baskerville, *see Meadows*, 2013-Ohio-4271, 2013 WL 5439847, at ¶ 8, there was no evidence that he stabbed the victim "while under the influence of sudden passion or in a sudden fit of rage." R.C. 2903.03(A); R.C. 2903.12(A). Thus, the evidence did not reasonably support a conviction on the offenses of voluntary manslaughter and aggravated assault, and the trial court did not err by refusing to instruct on those offenses. *See Lockhart*, 2017-Ohio-914, 2017 WL 1051980, at ¶ 14, quoting *Carter*, 89 Ohio St.3d at 600, 734 N.E.2d 345.

{¶ 50} To the extent Mr. Baskerville argues that the trial court erred by not instructing the jury on involuntary manslaughter, the record reflects that he waived that instruction. *See Lockhart*, 2017-Ohio-914, 2017 WL 1051980, at ¶ 14 ("A defendant * * * retains the right to waive such instructions, including through counsel."). Mr. Baskerville's counsel specifically informed the court that he was not requesting an involuntary manslaughter instruction because, as a matter of law, Mr.

Baskerville was not entitled to it. Even if defense counsel was incorrect in his legal assessment, "[a] party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *Lester v. Leuck*, 142 Ohio St. 91, 50 N.E.2d 145 (1943), paragraph one of the syllabus. Upon review, Mr. Baskerville's sixth assignment of error is overruled.

*State v. Baskerville*,  91 N.E.3d 340, 2017-Ohio-4050, at ¶¶46, 49-50.

In rejecting Baskerville's claims, the state appellate court applied straightforward and well-settled Ohio law and reasonably interpreted facts presented at trial.[11]  Baskerville has not – and cannot – show that his is the "rare" case where a "fundamental miscarriage of justice" likely "resulted in the conviction of a person who is actually innocent."[12]  Here, Baskerville does not argue he is "actually innocent" of causing the victim's death, but merely that he was legally not guilty on the basis of self-defense or guilty of a lesser charge.  (Doc. No. 27 at 6-16.)  Nor has he come forward with any new, reliable evidence that was not available at trial that makes it more likely than not any reasonable juror would have reasonable doubt about convicting him.

At best, Baskerville asserts a state law claim that the facts, as viewed most favorably to him,

---

[11] While Baskerville asserts the state appellate court should have undertaken a plain error review of this argument, even if the state appellate court erred in its determination on Baskerville's involuntary manslaughter claim, it is well-settled that federal courts do not correct errors of state law on federal habeas review.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted).

[12] "Actual innocence means factual innocence, not mere legal insufficiency. It is established when new, reliable, exculpatory evidence, not available at trial, makes it more likely than not that any reasonable juror would have reasonable doubt about convicting the petitioner. This standard is 'demanding' and permits habeas review only in 'the extraordinary case.'" *Freeman*,  2015 WL 11120969, at *7 n.92 (quoting *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted)).

fail to support the trial court's decision not to give an instruction on the lesser offense of voluntary manslaughter. The state appellate court considered Baskerville's arguments, including whether Baskerville acted under a "sudden passion," and rejected them. That decision is a matter of state law and cannot be reviewed by a federal habeas court. Baskerville's jury instruction claims, therefore, are non-cognizable on federal habeas review.

Accordingly, it is recommended Ground Two be dismissed as non-cognizable.

## C.     Ground Three

In his third ground for relief, Baskerville asserts his murder and felonious assault convictions were against the manifest weight of the evidence. (Doc. No. 1-4.) Baskerville argues:

> The State of Ohio convicted Mr. Baskerville of Murder without providing a scintilla of evidence proving each element of the crime. He was convicted of Murder under the theory that he committed a Felonious Assault. Mr. Baskerville contests that this death is justified because it was done out of fear of death or great bodily harm. The evidence showed the deceased died from one stab wound with a knife in his hand. Because he was convicted of Murder without any evidence of intent this conviction violated his due process and equal protection of the law.

(*Id.*) Respondent asserts manifest weight of the evidence claims are not cognizable on federal habeas review. (Doc. No. 16 at 31; Doc. No. 30 at 2.)

The state appellate court considered Baskerville's manifest weight of the evidence claim on direct appeal and rejected it. *State v. Baskerville*, 91 N.E.3d 340, 2017-Ohio-4050, at ¶¶15-30.

It is well-established manifest weight of the evidence claims are not cognizable on federal habeas review. *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Howard v. Tibbals*, No. 1:12 CV 1661, 2014 WL 201481, at *16 (N.D. Ohio Jan. 17, 2014); *Hess v. Eberlin*, No. 2:04-cv-1144, 2006 WL 2090093, at *6 (S.D. Ohio Jan. 17, 2006). *See also Gibson v. Miller*, 5:15CV119, 2016 WL 6277229, at *1 (N.D. Ohio Oct. 27, 2016) ("[C]ontentions that a conviction

38

is contrary to the manifest weight of the evidence also do not raise cognizable claims.").  Under Ohio law, an argument a conviction is against the manifest weight of the evidence "requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *Hess,* 2006 WL 2090093, at *7 (quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983)).  Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Baskerville's conviction was against the manifest weight of the evidence.  *See id.*

Respondent notes "it has been held that by raising manifest weight of the evidence, Baskerville has also fairly presented insufficiency of the evidence."  (Doc. No. 16 at 31) (citing *Ross v. Miller*, No. 1:10cv01185, 2011 WL 2292146 (N.D. Ohio May 10, 2011)).  *See also Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007) (Petition asserted a manifest weight of the evidence claim, not an insufficiency of the evidence claim, but the Sixth Circuit interpreted petition "as a complaint that the state court erroneously found [Petitioner's] conviction to be supported by sufficient evidence.").  Here, Baskerville raised a sufficiency of the evidence claim in Ground Eight. Nonetheless, given that *pro se* habeas petitions are liberally construed and Baskerville raised a manifest weight of the evidence argument on direct appeal, to the extent Baskerville's claims in Ground Three differ from those presented in Ground Eight when construed as an insufficiency of the evidence argument, the Court will consider and address them on the merits below.  *See Ross*, 2011 WL 2292146, at *13.

## V.    Review on the Merits

**A.    Legal Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, ⸺ U.S. ⸺, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting

*Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id. See also Shimel*, 838 F.3d at 695. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme

41

malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1.    Grounds Three and Eight

Before addressing the merits of these claims, the Court notes that, as Baskerville admits, Ground Eight was not raised on direct appeal.  But Baskerville raised a manifest weight of the evidence argument on direct appeal, and the Sixth Circuit has found a lack of procedural default where the petitioner presented a manifest weight of the evidence claim on direct appeal:

> As a threshold matter, we first determine that Nash did not procedurally default on his sufficiency of the evidence claim by not presenting it to the Ohio state courts. Under normal circumstances, habeas relief can only be sought for claims that have been ruled upon in state court. *See* 28 U.S.C. § 2254(b)(1)(A). On appeal to the Fifth Circuit Court of Appeals of Ohio, Nash argued that his conviction for felonious assault was against the manifest weight of the evidence, but he did not literally argue that there was insufficient evidence to support his conviction. Nevertheless, the sufficiency of the evidence issue was adequately passed upon by the Ohio courts because the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence. The Ohio Court of Appeals, for instance, has explained that " '[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.' Thus, a determination that a conviction is supported by the weight evidence will also be dispositive of the issue of sufficiency." *State v. Lee*, 158 Ohio App.3d 129, 814 N.E.2d 112, 115 (2004) (citations omitted). Therefore, the district court properly entertained Nash's sufficiency of the evidence claim because it has been effectively presented to the Ohio courts and was decided by the Ohio Court of Appeals.

*Nash*, 258 F. App'x at 764–65 (internal footnote omitted).  Therefore, Ground Eight is not

42

procedurally defaulted and the Court will consider it on the merits, along with Ground Three.  Both

Respondent and Baskerville addressed these claims jointly (Doc. No. 16 at 41-50; Doc. No. 27 at 13-

16), and for the reasons discussed above, the Court will do the same.

Baskerville asserts "there is no basis under the law to claim [he] was 'at fault' (first

aggressor) in creating the violent situation."  (Doc. No. 27 at 15.)  In addition, Baskerville "testified

he thought he was in imminent danger when [the victim] stated 'I'll leave you where you stand' and

reached for a weapon," which he claims his father's testimony about a conversation they had that

night corroborated.  (*Id.*)  Baskerville argues that "[g]iven the uncontested evidence that [he] engaged

in self-defense, a manifest miscarriage of justice occurred and the conviction must be reversed."  (*Id.*

at 16.)

Respondent essentially argues that, under the "doubly deferential" standard of review, the

state appellate court's rejection of Baskerville's sufficiency of the evidence claim is not based on an

unreasonable determination of the facts and is not contrary to or an unreasonable application of

clearly established Federal law.  (Doc. No. 16 at 42-50; Doc. No. 30 at 2-4.)  He maintains the state

appellate court reasonably concluded that the evidence presented at trial, including Baskerville's own

testimony, is sufficient to support Baskerville's convictions for murder and felonious assault.  (Doc.

No. 16 at 42-50; Doc. No. 30 at 2-4.)

As discussed above, the record reflects Baskerville raised a manifest weight of the evidence

claim on direct appeal to both the state appellate court and the Supreme Court of Ohio.  (Doc. No.

16-1, Ex. 7, 12.)  The state appellate court considered this claim on the merits and rejected it as

follows:

> {¶ 15} In his seventh assignment of error, Mr. Baskerville argues that his convictions
> for murder and felonious assault are against the manifest weight of the evidence.

Specifically, he argues that the greater weight of the evidence presented at trial demonstrated that he acted in self-defense. This Court disagrees.

{¶ 16} When a defendant argues that his conviction is against the weight of the evidence, this court must review all of the evidence before the trial court.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist. 1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact [-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340, 515 N.E.2d 1009.

{¶ 17} Relevant to this appeal, a person commits murder when he either "purposely cause[s] the death of another" or "cause[s] the death of another as a proximate result of [his] committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." R.C. 2903.02(A), (B). A person commits felonious assault when he either knowingly "[c]ause[s] serious physical harm to another" or knowingly "[c]ause [s] * * * physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(1), (2). There is no dispute that Mr. Baskerville's felonious assault charge served as the predicate offense for his felony murder charge.

{¶ 18} "A defendant has the burden of establishing the affirmative defense of self-defense by a preponderance of the evidence." *State v. Gates*, 9th Dist. Summit No. 24941, 2010-Ohio-2994, 2010 WL 2624109, ¶ 7. Where a defendant has used deadly force, he must prove that

> "(1) [he] was not at fault in creating the violent situation, (2) [he] had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that [he] did not violate any duty to retreat or avoid the danger."

*State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075, ¶ 36, quoting *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997); R.C. 2901.05.

44

"The 'elements of self-defense are cumulative.' " *State v. Osborne*, 9th Dist. Summit No. 27563, 2016-Ohio-282, 2016 WL 515404, ¶ 6, quoting *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

{¶ 19} The victim's fiancée testified that, the night this incident occurred, she and the victim were at the mall with their three-year-old son. They went to several stores and were about to walk into another when Mr. Baskerville called out to the victim. The victim's fiancée was familiar with Mr. Baskerville because he had engaged in illegal dealings with both her brother and the victim. She testified that the victim stopped to speak with Mr. Baskerville and, as she continued into the store with her son, she heard Mr. Baskerville say "[s]omething pertaining to money." She testified that the two men began to argue while she was inside the store and, at some point, the victim called her over to ask a question. Specifically, he asked whether Mr. Baskerville had told her about his (the victim's) infidelity. Once she confirmed that Mr. Baskerville had done so, she returned to the store, and the two men continued to argue. She testified that she heard the victim say, "I don't have your money," and later heard one of the men say "let's take this outside * * *." She then saw both men begin walking in the same direction, so she left the store with her son to follow them.

{¶ 20} As the two men walked a distance in front of the victim's fiancée, she could hear that they were still arguing. She testified that her fiancé turned around twice and cautioned her "to take [their] son and get back." Accordingly, she remained inside the mall with her son as the two men walked outside and stood on the sidewalk in front of the mall's glass entryway. She continued to watch as the victim stood with his back to her and Mr. Baskerville stood in front of him. The victim's fiancée testified that the two men were "steady arguing" when Mr. Baskerville jumped up, punched the victim in the neck, and ran. The victim then ran back inside while holding his neck. His fiancée testified that he eventually stopped running and lost consciousness next to a raised platform in the center of one of the mall's aisles. She confirmed that a knife the police found on the platform resembled a pocket knife that the victim carried regularly. There was testimony that the knife's blade was out when the police found it and that DNA found on the knife's blade and handle was consistent with the victim's.

{¶ 21} Dr. Dorothy Dean, a former deputy medical examiner for Summit County, performed the victim's autopsy. She testified that the victim sustained a stab wound to the left side of his neck from a sharp instrument consistent with a knife. The instrument penetrated three inches "into his neck from left to right" and cut a large number of muscles, his jugular vein, and his trachea. Dr. Dean testified that the victim died from massive blood loss due to the stab wound he sustained. She further testified that, during her examination, she did not note any additional, relevant injuries to the victim that might be consistent with a struggle or defensive wounds.

{¶ 22} Mr. Baskerville's father testified that, about half an hour after he arrived home

45

on the night of the stabbing, he received a call from Mr. Baskerville. He testified that Mr. Baskerville routinely drove a red SUV and that the call was about the car. Specifically, Mr. Baskerville called to say that he had parked the car behind his father's house with the keys inside and would call back later. At that point, Mr. Baskerville's father had no knowledge of the stabbing. Within the next 15 minutes, however, people began to contact him and he received information from them. Mr. Baskerville then called him again later that evening. During the second phone call, Mr. Baskerville told his father that he had gotten into a confrontation at the mall with a man who owed him money. He stated that the man became irate and eventually suggested they "take this outside" even though he (Mr. Baskerville) told the man that "[i]t ain't even got to go this far." He told his father that the man was very aggressive, shouting expletives and stating that he was not afraid of Mr. Baskerville. He told his father, after they went outside, he "thought that [the man] was going to do something to [him]," so he stabbed him in the neck and ran. Although Mr. Baskerville's father encouraged him to turn himself in, Mr. Baskerville did not do so. Meanwhile, his father contacted the police to report that Mr. Baskerville's car was parked at his house. There was testimony that the car had been wiped clean, but that forensic scientists were still able to find DNA on swabs taken from its interior. There was testimony that the DNA they found was consistent with the victim's.

{¶ 23} Detective James Pasheilich testified that he secured an arrest warrant for Mr. Baskerville within a few hours of the stabbing, but that he evaded capture for more than a month. The detective testified that his department had to ask the Northeastern Fugitive Task Force to aid in Mr. Baskerville's apprehension. He testified that the task force eventually found Mr. Baskerville in West Virginia and secured his return to Ohio.

{¶ 24} Mr. Baskerville testified in his own defense and also presented the testimony of a friend who worked at a kiosk in the mall where the stabbing occurred. The friend testified that he was working the evening of the stabbing and Mr. Baskerville came to the kiosk to ask questions about a cell phone repair. While the friend was helping other customers, he saw Mr. Baskerville walk over to a nearby shoe store and begin talking to a man he did not recognize. As their conversation continued, the friend testified that the other man (the victim) began talking louder and acting "a little upset" while Mr. Baskerville remained quiet and "kind of nonchalant." He testified that, at one point, he heard Mr. Baskerville tell the other man, "it don't have to be like this; he don't have to get loud because it * * * wasn't that serious." The friend last observed the two men walk away together while a woman and a small child trailed behind them.

{¶ 25} Mr. Baskerville testified that he and his cousin went to the mall that evening so that he could stop at his friend's kiosk regarding his cell phone. While there, he happened to see the victim and went to speak to him. He testified that he had not seen the victim for several months and, before that, had fronted the victim drugs with the

understanding that the victim would sell them and return with money. Mr. Baskerville stated that the victim did not respond when he first called over to him, so he tried again. He testified that, once he got the victim's attention and asked about their unfinished business, the victim immediately became upset. Mr. Baskerville claimed that he tried to get the victim to calm down because he only wanted to know why the victim had failed to follow through with their arrangement. He testified, however, that the victim told him, "mother f* * *er, I don't owe you s* * *," and accused Mr. Baskerville of recently trying to find him. As Mr. Baskerville continued to ask the victim about their deal amidst the victim's expletive-laced responses, the victim said: "If you think that, we going to settle this s* * * outside. Let's go outside."

{¶ 26} According to Mr. Baskerville, after the victim suggested they go outside, he felt his phone vibrate and realized it was time to leave and go pick up his kids. He then told his cousin to meet him at the car and began walking outside. Although he walked alongside the victim, Mr. Baskerville testified that it was his intention to leave and "kind of defuse the situation." Nevertheless, he admitted that he and the victim ended up outside, standing face-to-face. He acknowledged there was "tension in the air" as the two faced each other. He testified that, as they argued, the victim stated: "[B]* * * *, I don't owe you s* * *. I leave you right where you stand." According to Mr. Baskerville, he took the latter statement as a threat, and shortly after the victim uttered it, the victim went to reach to his side or to his pocket. At that moment, Mr. Baskerville felt that if he did not "do something right [then] to stop what[ was] about to happen, something[ ] [would] happen to [him]." He, therefore, quickly "pop[ped] [his] knife out" and struck the victim. He testified that he did not know where he struck the victim and did not intend to kill him. He stated that, when he backed up, he saw something in the victim's hand before turning to run. Mr. Baskerville confirmed that he was carrying a knife in his pocket that day, but claimed that he only carried it as a protective measure. He also testified that he knew the victim had a reputation for being "a snake and a bully" and for carrying a weapon.

{¶ 27} Mr. Baskerville admitted that, after he stabbed the victim, he took steps to hide evidence from the police. Specifically, he admitted that he took his car to his father's house, wiped it down with cleaning solution, burned the clothes he was wearing, and left town. He further admitted that he disposed of his knife, which he later termed "the murder weapon," somewhere between Akron and West Virginia. According to Mr. Baskerville, he went to West Virginia to try to earn money for his defense. He acknowledged, however, that he did not learn about the intricacies of self-defense until he was apprehended and spoke to another inmate at the jail. He acknowledged that the inmate told him how he had "beat a body case" (i.e., a murder case) by tweaking his story to reflect that he had acted in self-defense. Mr. Baskerville conceded that, at that point, he was deciding whether to lie about what had happened. He admitted saying that his decision to lie would depend upon the quality of the evidence the police had against him.

47

{¶ 28} Mr. Baskerville argues that his convictions are against the manifest weight of the evidence because (1) he was not at fault in creating the violent situation that erupted here, (2) he possessed a bona fide belief that he was in imminent harm, and (3) before he acted, he had attempted to leave. He asserts that there can be "no doubt" the victim pulled a knife on him, as the police found the knife next to the victim's body. Accordingly, he argues that the jury lost its way by not concluding that he acted in self-defense.

{¶ 29} Having reviewed the record, we cannot conclude that the jury lost its way when it rejected Mr. Baskerville's claim of self-defense. A person is only entitled to use deadly force if his " 'only means of escape was the use of force' " such that he did not violate a duty to retreat or avoid the danger. *Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075, at ¶ 36, quoting *Thomas*, 77 Ohio St.3d at 326, 673 N.E.2d 1339. Even assuming that Mr. Baskerville proved he was not at fault and was in imminent danger when he struck the victim, the jury reasonably could have concluded that he violated his duty to retreat. *See Osborne*, 2016-Ohio-282, 2016 WL 515404, at ¶ 6, quoting *Jackson*, 22 Ohio St.3d at 284, 490 N.E.2d 893 (elements of self-defense cumulative). The jury heard testimony that Mr. Baskerville and the victim began their disagreement in the mall before walking outside together and arguing face-to-face. They also heard testimony that the victim, who was angry, swearing, and allegedly had a reputation for violence, had specifically suggested that he and Mr. Baskerville settle their argument outside. The jury reasonably could have concluded that, by not remaining in the mall or otherwise retreating from the victim, Mr. Baskerville violated a duty to retreat or avoid danger. *See State v. Williams*, 9th Dist. Summit No. 22710, 2006-Ohio-1031, 2006 WL 544483, ¶ 17. Although Mr. Baskerville claimed that he was walking outside for the purpose of leaving the mall, the jury was free to reject his testimony. See *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, 2004 WL 3017207, ¶ 35 ("[I]n reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness.").

{¶ 30} The State presented evidence that Mr. Baskerville repeatedly pressed the victim about drug money he allegedly owed, engaged in a face-to-face argument with him outside the mall, and stabbed him in the neck with a knife that he was carrying in his pocket. They also heard testimony that, following the stabbing, Mr. Baskerville took significant measures to destroy evidence related to the crime, fled the state, and avoided apprehension for more than a month. *See State v. Clayton*, 9th Dist. Summit No. 27352, 2015-Ohio-498, 2015 WL 628468, ¶ 17 (noting flight can be evidence of consciousness of guilt). Finally, they heard testimony that Mr. Baskerville learned about self-defense in jail and specifically said he would decide whether to tell the truth about these events once he learned what evidence the State had against him. Based upon all the evidence in the record, this Court cannot conclude that this is the exceptional case where the jury lost its way in convicting Mr. Baskerville. *See Otten*, 33 Ohio App.3d at 340, 515 N.E.2d 1009. As such, his seventh assignment of error is overruled.

*State v. Baskerville*, 91 N.E3d 340, 2017-Ohio-4050, at ¶¶15-30.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *Id.  See also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution."  *Heinish v. Tate*, No. 92-3414, 1993 WL 460782, at *3 (6th Cir. 1993) (citing *Walker*, 703 F.3d at 969–70.)  *See also Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review).

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'  *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*).  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a

49

> sufficiency of the evidence challenge simply because the federal court disagrees
> with the state court. The federal court instead may do so only if the state court
> decision was 'objectively unreasonable.' " *Ibid.* (quoting *Renico v. Lett*, 559 U.S.
> 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012).  Under this

standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings

would be sufficient to convince us of the petitioner's guilt," nor can "[w]e . . . inquire whether any

rational trier of fact would conclude that petitioner . . . is guilty of the offenses with which he is

charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine

its review to determining whether the state court "was unreasonable in its conclusion that a rational

trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced

at trial." *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411,

1420, 173 L.Ed.2d 251 (2009)).

Upon careful review of the trial transcript, the Court finds the state appellate court reasonably

determined Baskerville's convictions for murder and felonious assault were supported by sufficient

evidence.  In resolving this claim, the state appellate court accurately summarized the evidence of

record and correctly identified the applicable law.  As noted in the state appellate court opinion, the

victim's fiancee testified that Baskerville called out to the victim while they were at the mall.  (Doc.

No. 16-4 at 292.)  She heard Baskerville say " something about money" to the victim.  (*Id.*)  The

victim stopped to speak to Baskerville while she proceeded into a store.  (*Id.* at 292-93.)  While she

was inside the store, the two men began arguing and, at one point called her over.  (*Id.* at 293-95.)

She went over to the two men, answered a question, and went back into the store.  (*Id.* at 297-98.)

At some point in time, she heard the victim say "I don't have your money" to Baskerville and later

heard one of the men say "Let's take this outside," although she did not know which one said it.  (*Id.*

at 329-30.)  Shortly after she heard one of them suggest taking it outside, the men began walking down the mall, still arguing.  (*Id.* at 298, 331.)  The victim's fiancee and her young son followed the two men as they walked.  (*Id.* at 299-300.)  She testified the victim twice told her "to take [their] son and get back."  (*Id.* at 305.)  The men walked outside the mall and stood on the sidewalk in front of the glass entryway while she remained inside with her son.  (*Id.* at 302-05.)  She testified the victim's back was to her and Baskerville stood in front of him.  (*Id.* at 305.)  The street, then, was behind Baskerville.  (*Id.*)  The victim's fiancee testified the men were "steady arguing" when Baskerville jumped up, punched the victim in the neck, and ran.  (*Id.* at 305-06.)

Baskerville testified in his own defense.  He acknowledged he had not seen the victim for several months after fronting him drugs with the understanding the victim would sell them and return with money, and the victim "reneged" on their agreement.   (Doc. No. 16-8, at 799-800, 810, 847-48.)  After the victim suggested taking it outside, Baskerville testified his phone vibrated and he realized he needed to leave to pick up his children from daycare.  (*Id.* at 813.)  Baskerville admitted to reaching "deep" in his pocket when his phone rang (*id.* at 869), and the victim said he didn't care what was in Baskerville's pocket multiple times.  (*Id.* at 814.)  Baskerville proceeded to walk down the mall with the victim and head outside with him, although he testified he was trying to leave and "defuse" the situation.  (*Id.* at 814-15.)  On cross-examination, Baskerville admitted he could have walked away from the argument while the two men were inside the mall, although he maintained he attempted to walk away "at the end of the conversation." (*Id.* at 865-66, 878.)  But he and the victim ultimately ended up outside face-to-face, still arguing, and Baskerville admitted there was "tension in the air" as they faced each other.  (*Id.* at 816-17.)  Baskerville testified that the victim told him, "[B]***, I don't owe you s***. I leave you right where you stand." (*Id.* at 819.)  Baskerville took

that as a threat.  (*Id.*)  He admitted to stabbing the victim, although he claimed it was in self-defense, and running away after doing so.  (*Id.* at 820-21.)

Baskerville admitted to fleeing the scene after the stabbing, tampering with evidence by attempting to wipe blood from his car, leaving his car at his father's house so the police couldn't find it, burning the clothes he was wearing, getting rid of the knife used in the stabbing (which at one point he referred to as "the murder weapon"), and trying to get rid of all possible evidence linking him to the victim's death.  (*Id.* at 824, 826-27, 890-91, 894, 901-02.)  He admitted to fleeing first to Columbus and then West Virginia, where the Fugitive Task Force apprehended him about a month after the stabbing.  (*Id.* at 894- 96; Doc. No. 16-7 at 727.)  On cross-examination, Baskerville admitted to learning about how another inmate had "beat a body case" by lying about self-defense while in jail.  (Doc. No. 16-8 at 898.)  He admitted he had considered lying about the circumstances of the stabbing, but ultimately decided to tell the truth.  (*Id.* at 899, 908.)  But he admitted he said he would decide whether to tell the truth after he found out what evidence the State had against him:

> **Q:** Mr. Baskerville, just so that we're clear, Mr. Whitney asked you about whether you decided to tell the lie or the truth, your words were I don't know which one to do, be real or heap up a good lie, correct?
>
> **A:** Yes.
>
> **Q:** All right. And then you went on to say, it's going to depend on what we got; we got to wait and see, correct?
>
> **A:** As far as -- yes, evidence, yes.
>
> **Q:** All right. So it wasn't that you were going to do the right thing; it's you were going to wait and see what the evidence produced to make your decision as to  whether  you were going to heap up a good lie or be real, correct?
>
> **A:** Yes, because I didn't know if they have footage of what transpired outside.
>
> **Q:** Right.  And you also were told by your fellow inmates that a murder case is

52

one of the easiest to beat?

**A:**    I mean, that's what somebody told me, yes.

**Q:**    And you even talked about that and considered that, yes?

**A:**    Yes.

(*Id.* at 910-11.)

The state appellate court reasonably concluded that Baskerville's convictions were not against the manifest weight of the evidence, which necessarily implied a finding that sufficient evidence supported the convictions.[13]  *See Nash*, 258 F. App'x at 765.  As the state appellate court noted, given the facts, even if the jury believed Baskerville proved he was not at fault and was in imminent danger when he stabbed the victim, the jury reasonably could have concluded that Baskerville violated his duty to retreat or avoid danger by not remaining in the mall or otherwise getting away from the victim.  Furthermore, Baskerville admitted to arguing with the victim face to face, undertaking considerable measures to destroy the physical evidence tying him to the stabbing, learning about self-defense while in jail, and stating he would decide whether to tell the truth once

---

[13] Under Ohio law, "[n]o person shall purposely cause the death of another" or "cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree . . . ." R.C. 2903.02(A)-(B).  A person commits felonious assault when he "knowingly" either "cause[s] serious physical harm to another" or "cause[s] or attempt[s] to cause physical harm to another . . . by means of a deadly weapon . . . ."  R.C. 2903.11(A).  As the state appellate court noted, there was no dispute Baskerville's felonious assault charge served as the underlying felony for his felony murder charge.  *State v. Baskerville*, 91 N.E.3d 340, 2017-Ohio-4050, at ¶17.  In Ohio, to prove self-defense, a defendant must prove the following by a preponderance of the evidence: "(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger."  *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075, ¶36 (2010) (citation omitted).

he learned what evidence the State had against him.  Based on the above and applying the "double deference" required under the AEDPA, the Court is unable to say the state appellate court's decision "was so unsupportable as to fall below the threshold of bare rationality."  *Coleman*, 566 U.S. at 656 ("[T]he only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality.").

There is no basis for this Court to conclude that the state court decision in this case involved an unreasonable determination of the facts or was contrary to, or involved an unreasonable application of, clearly established federal law.  Accordingly, it is recommended the Court find Baskerville's Third and Eighth grounds for relief lack merit.

### 2. Ground Five (Supporting Fact B)

In Ground Five, Baskerville argues "the prosecutor's conduct rose to the level of prosecutorial misconduct and deprived [him] of his right's [sic] to due process of law and a fair trial in violation of his 5th, 6th, and 14th Amendment rights under the U.S. Constitution."  (Doc. No. 1-4; Doc. No. 27 at 21.)  Baskerville asserts three specific instances of alleged misconduct by the prosecutor:

> (A) After sustained objections the prosecutor repeatedly disregarded the Court's rulings and continued to inject improper comments and questions in front of the jury which were designed to invite the jury to speculate on matters not in evidence.

> (B) When the State did not get the answer it wanted from their [sic] own witness the prosecutor continually referred to an inadmissible video statement to try to employ impeachment by prior inconsistent statement as a mere subterfuge to get before the jury inadmissible evidence.

> (C) On cross-examination the prosecutor went in depth about Mr. Baskerville's previous crimes and bad acts including pointing out he was once convicted for carrying a gun, although this case involved a stabbing for the sole purpose of showing his propensity for crime and bad character.

54

(Doc. No. 1-4.)

As discussed above in Section III.B.1, *supra*, supporting facts (A) and (C) are procedurally defaulted. With respect to supporting fact (B), Baskerville maintains that the prosecutor's questioning of a 14-year old independent witness about his hearing a comment about a gun during Baskerville and the victim's argument was "irrelevant an[d] improper" as the case involved a stabbing, not a shooting. (Doc. No. 27 at 21-22.) Therefore, Baskerville concludes, the "sole purpose" of the examination was to attack his character. (*Id.* at 22.)

Respondent argues that even if the prosecutor's examination of the witness was improper, Baskerville fails to show any prejudice, as there is "no imputation" the witness testified falsely and the victim was stabbed, not shot. (Doc. No. 16 at 40-41.) Therefore, Respondent concludes, any error was harmless. (*Id.* at 41.)

The state appellate court rejected Baskerville's argument that the examination of the 14-year old witness constituted prosecutorial misconduct. *State v. Baskerville*, 91 N.E. 3d 340, 2017-Ohio-4050, at ¶39. The relevant portions of the state appellate court's decision follow:

### ASSIGNMENT OF ERROR NO. 5
THE TRIAL COURT ERRED IN ALLOWING PROSECUTOR TO CONTINUALLY REFER TO AN INADMISSIBLE VIDEO AND TO USE THE VIDEO AND INFORMATION THEREIN FOR IMPEACHMENT OF THE STATE'S OWN WITNESS.

{¶ 37} In his fifth assignment of error, Mr. Baskerville argues that the trial court erred when it permitted the State to impeach its own witness. Because Mr. Baskerville has not explained how he was prejudiced by the court's error, if any, this Court rejects his argument.

{¶ 38} In its case-in-chief, the State called as a witness a 14–year–old who was at the mall with a friend on the night of the stabbing. The juvenile testified that he and his friend heard Mr. Baskerville and the victim arguing, so they decided to follow them in hopes of seeing further argument or a fight. They walked outside behind the men and passed by them when the men stopped. The juvenile testified that he could not

55

recall exactly what the men were saying, but it involved money. Although the prosecutor attempted to employ the procedure for refreshing a witness' recollection, the juvenile would not respond affirmatively when the prosecutor asked whether reviewing his prior statement would aid his memory. The prosecutor then asked the juvenile whether he remembered hearing one of the men make a statement about a gun, and the juvenile stated that he did not. At that point, the prosecutor sought to introduce the statement that the juvenile gave to the police, and defense counsel objected on the basis that the prosecutor was attempting to impeach his own witness. Following an extended side bar discussion, the prosecutor once again attempted to use the procedure for refreshing a witness' recollection. The juvenile then agreed that it would be helpful to review his prior statement and did so before questioning resumed. The juvenile ultimately agreed that he had heard either Mr. Baskerville or the victim say something about a gun. He did not recall what exactly was said or by whom.

{¶ 39} Mr. Baskerville argues that the trial court erred when it allowed the juvenile to testify that he heard a statement about a gun. He argues that the juvenile's testimony was improper because the State essentially had to impeach him to elicit it. Yet, even assuming the procedure here was flawed, Mr. Baskerville has not explained how that error affected his substantial rights. *See* Crim.R. 52(A). The victim died as a result of a stabbing, not a shooting, and there was no suggestion at trial that either Mr. Baskerville or the victim possessed a gun at the time of this incident. Additionally, the juvenile who testified readily admitted that he could not recall what was said about a gun or which man even uttered that statement. Under these facts and circumstances, Mr. Baskerville has not shown that he suffered any prejudice as a result of the trial court's error, if any. *See id.* As such, his fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 3

THE PROSECUTOR'S CONDUCT THROUGHOUT THE TRIAL ROSE TO THE LEVEL OF PROSECUTORIAL MISCONDUCT AND DEPRIVED MR. BASKERVILLE OF HIS RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL IN VIOLATION OF HIS 5TH, 6TH, AND 14TH AMENDMENT RIGHTS UNDER THE [U.S.] CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.

{¶ 40} In his third assignment of error, Mr. Baskerville argues that prosecutorial misconduct deprived him of a fair trial. This Court disagrees.

{¶ 41} In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, 2004 WL

508775, ¶ 6, citing *State v. Carter*, 72 Ohio St.3d 545, 557, 651 N.E.2d 965 (1995). The defendant must show that, but for the prosecutor's misconduct, the trier of fact would not have convicted *356 him. *State v. Lollis*, 9th Dist. Summit No. 24826, 2010-Ohio-4457, 2010 WL 3680964, ¶ 24. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.' " *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶ 42} Mr. Baskerville alleges that the prosecutor engaged in misconduct by interjecting, at multiple points throughout the trial, otherwise irrelevant "references to blood and gore." He asserts that the prosecutor unnecessarily drew attention to the victim's substantial blood loss through testimony about his injuries, photographs of his blood and autopsy, and the crime scene video that was recorded at the mall. He further argues that the prosecutor engaged in misconduct when he impeached his own witness.

\* \* \*

{¶ 44} This Court likewise rejects Mr. Baskerville's argument that he was deprived of a fair trial when the prosecutor impeached his own witness. As discussed in Mr. Baskerville's fifth assignment of error, Mr. Baskerville has not shown that he suffered prejudice as a result of the admission of the 14–year–old witness' testimony. Absent a showing of prejudice, he cannot succeed on his prosecutorial misconduct argument. *See id.* Thus, his third assignment of error is overruled.

*State v. Baskerville*, 91 N.E.3d 340, 2017-Ohio-4050, at ¶¶ 37-42, 44.

The Supreme Court explained the contours of harmless error analysis as follows:

The test for whether a federal constitutional error was harmless depends on the procedural posture of the case.  On direct appeal, the harmlessness standard is the one prescribed in *Chapman* [*v. California*], 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 [1967]:  "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  *Id.*, at 24, 87 S.Ct. 824.

In a collateral proceeding, the test is different.  For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' "  *Brecht [v. Abrahamson]*, 507 U.S. [619], 637, 113 S.Ct. 1710 [1993] (quoting *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986)).  Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.' "  *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130

L.Ed.2d 947 (1995).  There must be more than a "reasonable possibility" that the error was harmful.  *Brecht, supra*, at 637, 113 S.Ct. 1710 (internal quotation marks omitted).  The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error."  *Calderon v. Coleman*, 525 U.S. 141, 146, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998) (per curiam ).

*Davis v. Ayala*, – U.S. –, 135 S.Ct. 2187, 2198, 192 L.Ed.2d 323 (2015).  *See also Blackston*, 780 F.3d at 359 ("In the context of federal habeas corpus, a constitutional error will warrant relief only if the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'").

Where, as here, a federal habeas petitioner challenges a state court's harmless error analysis, "he must meet the *Brecht* standard."  *Ayala,* 135 S.Ct. at 2198.  Albeit in an unpublished decision, the Sixth Circuit recently explained the application of the *Brecht* standard in the context of prosecutorial misconduct:

> This finding of impropriety, however, does not resolve the issue. We must still address the question of whether the prosecutor's misconduct was harmless. In other words, whether the prosecutor's introduction of the improper character evidence "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (*quoting Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). Although Brecht is a pre-AEDPA case, the Supreme Court has subsequently held that the Brecht test "subsumes" the AEDPA requirements such that a formal application of both tests is unnecessary. *Fry v. Pliler*, 551 U.S. 112, 120, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007). Thus, the law in this Circuit is that "*Brecht* is always the test, and there is no reason to ask both whether the state court 'unreasonably' applied *Chapman*[] under the AEDPA and, further, whether the constitutional error had a 'substantial and injurious' effect on the jury's verdict." *Ruelas v. Wolfenbarger*, 580 F.3d 403, 412 (6th Cir. 2009). This, however, does not render the state court's harmless-error determination irrelevant. As the Supreme Court has most recently clarified, "a prisoner who seeks federal habeas corpus relief must satisfy *Brecht*, and if the state court adjudicated his claim on the merits, the *Brecht* test subsumes the limitations imposed by AEDPA." *Davis v. Ayala*, —— U.S. ——, 135 S.Ct. 2187, 2199, 192 L.Ed.2d 323 (2015).

To succeed on his prosecutorial-misconduct claim, Sheard must show that he was "actually prejudiced" by the prosecutor's comments, "a standard that he necessarily

58

cannot satisfy if a fairminded jurist could agree with the [Michigan Court of Appeals'] decision that this [conduct] met the *Chapman* standard of harmlessness." *Id.*

*Sheard v. Klee*, 692 F. App'x 780, 786 (6th Cir. 2017), *cert. denied*, 138 S.Ct. 1006, 200 L.Ed.2d 273 (2018).

"[A] state court decision is not unreasonable if 'fairminded jurists could disagree' on its correctness.'" *Ayala*, 135 S.Ct. at 2199 (quoting *Richter*, 562 U.S. at 101). A habeas petitioner, therefore, must show that "the state court's decision to reject his claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103).

For the following reasons, the Court finds the state appellate court reasonably concluded that the prosecutor's examination of the 14-year old witness, to the extent it was error, constituted harmless error. As the state appellate court noted, the State "essentially impeached" its own witness when the prosecutor questioned the juvenile about a prior inconsistent statement and the juvenile witness conceded that in an interview with the police on the night of the stabbing, he said it was Baskerville who said something about a gun. (Doc. No. 16- 5 at 548-50.) But as Baskerville asserts in his Traverse, this case involved a stabbing, not a shooting. (Doc. No. 27 at 22.) And as Baskerville himself recognizes (*id.*), the juvenile witness testified he could not remember what was said about a gun or who said it. (Doc. No. 16-5 at 541-43; 557-58.) As Baskerville himself argues, another State's witness "corroborated" the juvenile witness's testimony when he testified the boys' backs were to Baskerville and the victim; therefore, "it was impossible to know who said what." (Doc. No. 27 at 22; *see also* Doc. No. 16-5 at 577-78.) Baskerville presents no argument or evidence that the 14-year old gave false testimony. (*See* Doc. No. 27.) Furthermore, in light of the other

evidence presented at trial, discussed in Section V.A.1, *supra*, Baskerville cannot show that any misconduct in the prosecutor's examination of the juvenile witness had a "substantial and injurious effect" on the jury's verdict.

Accordingly, and for all the reasons set forth above, the Court finds the state appellate court's harmless error determination was not unreasonable; *i.e.*, it was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Ayala*, 135 S.Ct. at 2199 (quoting *Richter*, 562 U.S. at 103).

Accordingly, and for all the reasons set forth above, it is recommended the Court find Ground Five (supporting fact (B)) is without merit.

## VI. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date:   October 30, 2019                          *s/ Jonathan Greenberg*
                                                  Jonathan D. Greenberg
                                                  United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**